## Moors v. Kentucky Electrical Company.

(Decided January 21, 1919.)

### Appeal from Daviess Circuit Court.

1. Contracts—Performance—Estoppel.—Where a party to a contract requests and directs the other to perform the contract in a certain way, and the latter accedes to the request and performs it as directed, the former is estopped to deny, that the work contracted for, was not performed in accordance with the contract, if the contract was not one, which the law requires to be in writing.

2. Attachment—Evidence—Burden of Proof.—Where an attachment is obtained upon the ground, that the defendant has no property in the state, subject to execution or not enough to satisfy the plaintiff's demand, and the collection of the demand will be endangered by a delay in obtaining a judgment and a return of no property found, and the defendant does not deny that he has no property subject to execution or not enough to satisfy the claim, but does deny, that the collection of the demand will be endangered by delay in obtaining a judgment or a return of no property, a prima facie case exists for plaintiff and the burden of proof is upon the defendant.

C. W. WELLS and W. F. HAYES for appellant.

W. P. SANDIDGE for appellee.

Opinion of the Court by Judge Hurt—Affirming.

The appellee, Kentucky Electrical Company, was the plaintiff below, and instituted this action against the appellant, George F. Moors, to recover of him, the contract price of an engine, which it alleged, that it had constructed for him. Moors was the owner of certain patent rights, pertaining to engines, and he and the appellee, entered into a contract, which was put into writing, for the building of engines, containing the patented qualities or devices. Only one engine was constructed. The contract, between the parties, so far as it bears upon the present controversy, provided, that, whereas Moors owned letters patent on a rotary engine and was desirous of having them manufactured, ready, for the market, had entered into a contract with the appellee to have the engines built upon the conditions, as follows: the appellee was to furnish all the labor and materials, and, build the engines according to plans, and specifications, patterns, etc., furnished by the appellant, for which the appellant was to pay, the appellee the actual costs of all the labor and materials, "plus 10% for overhead charges and then, plus 25% profit." The appellee agreed to begin the building of the engines "as soon as the party of the second part furnished the necessary patterns, plans and specifications for same." In the performance of the contract, the appellee agreed to furnish the labor and materials, at the lowest price obtainable, and the appellant was to have access to the books of appellee, in order, that he might be acquainted with the price of materials and the costs of the labor, with which he might be charged. The appellant was to receive and pay for the first engine constructed under the contract, within a reasonable time, after its completion in accordance with the contract. The plans and specifications were not attached to the contract, nor any papers containing them, were referred to, in the written memorial of the contract. The written memorial of the contract did not require the plans nor specifications to be printed nor written, and evidently, it was contemplated, by the parties, when making the contract, that the plans, specifications, patterns, etc., were to be, thereafter, furnished to appellee, by appellant, as the building of the engines was to commence, and not until, after the plans, specifications, patterns, etc., were furnished by appellant. After the execution of the writing, which evidenced the contract, the appellee furnished the

appellant, a room, in its shop, which he might occupy and utilize in the work of drafting and preparing his plans and specifications. Appellant accepted the room and occupied it during the time the work of building the engine went on. The appellee designated and set apart certain workmen, from among its employes, to do the work of building the engines, and directions were given them to receive, and comply with the directions of appellant, in all things touching the building of the engines, and appellant was notified, that such dispositions and directions had been given. The appellant furnished printed plans for an engine, but, it does not clearly appear, that the engine, in controversy, was built in exact accordance with the printed plans, but, he never furnished any written specifications, and, the appellee was controlled in providing the materials, and the workmen, in performing the labor, by the oral directions of the appellant, made, from time to time, as the work progressed. The building of the engine, seems to have occupied something, between nine and eleven months, after the execution of the contract. About one year, from the time work had ceased upon the engine, the appellee, contending, that it had completed the building of one engine in accordance with the contract, and appellant, claiming, that it had not done so, and refusing to receive or pay for the engine, the appellee brought this action against him to recover the price, which it claimed to be entitled to, under the contract. The petition alleged, that appellee had furnished the materials and constructed an engine, in accordance with the plans and specifications, patterns, etc., furnished by appellant, and, therefore, in accordance with the contract, and as soon as it was completed, it was ready, able and willing to deliver it to appellant and offered to do so, but, that appellant refused to receive or pay for it, claiming that the engine was not built according to the contract. Appellee, further alleged, that as soon as it had been furnished with the plans, specifications, patterns, etc., it proceeded, with diligence, in the construction, until the engine was completed.

The appellant answered and denied, that the engine had been constructed according to the contract, but alleged, that it contained defective and imperfect parts, and material, and the parts were defectively and imperfectly made and put together. He, also, denied, that

the items of material, and labor sued for, had been used
in the construction of the engine, and by way of counter-
claim, sought the recovery of damages against appellee,
for its failure to make and deliver to him, an engine in
accordance with the contract, within a reasonable time.
The appellee, replied, denying the affirmative matter in
the answer, and pleading, that the materials, entering
into the construction of the engine, had been selected
by the appellant, and used by his direction, and that the
workmanship in making and putting together, the engine,
was done under the direct superintendence, and direc-
tions of appellant, and that appellant had supervision
over the entire work and the employees engaged in it, and
for such reason, he was estopped to deny, that the mater-
ials used were defective, or that the workmanship in mak-
ing or putting together the engine, or the manner of the
adjustment of its parts, was imperfect.   The appellant,
by rejoinder, denied the alleged grounds of estoppel, and
plead, that the appellee's employees, in selecting the ma-
terials, in a few instances only, advised with him, and that
they, a few times, consulted with him as a builder does
with an architect, but not otherwise, and that he assisted
the appellee's employees, as a helper, in moving some
parts of the engine, but, under their direction; that he
did not interfere with the employees, or the work done
by them, and did not attempt to direct or superintend
them.   The affirmative averments of the rejoinder were
denied, and upon these issues, a trial was had.

   During the trial, the appellant withdrew his denial
of the amount of labor and material and the value of it,
alleged in the petition to have been used and done upon
the engine, but, did not withdraw the claim, that a great
deal of the labor charged for, had been done in working
over defective parts, which had been improperly made.
There was no evidence nor claim, that the patterns fur-
nished or specified, by the appellant had been disregarded
in making the engine.   Neither was there any evidence,
which tended to prove that any of the labor charged for,
was done in working over defective parts, or parts im-
perfectly made.   There was proof, that certain parts,
which had been made and put into the engine, by the
direction of appellant, and under his supervision   were
taken out, and the style, and dimensions, and materials
changed, by his direction, when he had concluded to try,
in the engine, a part of another material, style or dimen-

sion, and labor was expended upon changes made in certain of the parts, from the specifications first given by appellant, but, there is no claim, in the evidence, that any of these parts, as originally made, were not in accordance with the oral directions of the appellant, or that the workmanship upon them, was not skillful. While the counterclaim of appellant for damages, because of failure of appellee to make and deliver an engine, within a reasonable time, is not inconsistent with and would not be defeated by a finding, that the engine was made in accordance with the contract, there was no evidence heard or offered, upon which the court could base an instruction for damages. There was evidence, which tended to prove, that the engine was made in accordance with the printed plans, specifications, and patterns, furnished by appellant, but there was some evidence, which tended to prove, that the printed plans were changed, to some extent, by the oral directions of appellant. The specifications were all oral, unless certain figures upon the plans could be considered to be specifications as to the dimensions of certain of the parts. There was, also, evidence, which tended, strongly, to prove, that the superintendency of the workmen in the work of building the engine had been given to, and accepted by the appellant, and that he remained at the shop and personally, selected the materials to be purchased and used by the appellee, and directed and supervised the manner of the work, the style and dimensions of the parts, and their adjustments, to constitute the engine. Several times, the engine was in condition, that it moved perfectly, and when finally adjusted, by mere observation, no material or substantial defect in it, could be observed. The evidence, however, showed, that it "leaked" steam upon one side, that is that the steam pressure upon one side was greater than upon the other, and gave it a pulling power upon one side of the engine, greater than upon the other. Why this defect existed, no one was able to explain, and the witnesses speculated much in regard to its cause. It could be inferred only, that it arose, either from imperfect workmanship, or imperfect adjustment, in some degree, too slight for observation. The evidence of the appellant, upon this subject, extended no further, than the proof of the facts as stated. He, however, denied, that he selected the material, except in a few instances, and did not superintend or direct the workmanship, in the making or ad-

justment of the parts of the engine. He, however, con-
ceded, that his specifications, as to the kind of material,
and the shape and dimensions of the parts, were orally
given. The court instructed the jury, if it believed, from
the evidence, that the engine was built by the appellee in
accordance with the plans and specifications furnished
by the appellant; or, that, the work done and the ma-
terials furnished, was performed and furnished as ap-
pellant requested and directed it should be done and fur-
nished, to find for appellee, the sum of $1,898.74, but un-
less the jury did so believe, as above stated, it should
find, for appellant. The jury returned a verdict for ap-
pellee, for the sum named, which was alleged and not de-
nied to be the amount expended for labor and materials,
which went into the making of the engine, together with
the additional per centum provided by the contract. A
new trial was refused, and a judgment rendered, in ac-
cordance with the verdict of the jury. The appellant
seeks a reversal, upon three grounds:

. (1)   The court erred in overruling his motion for a
directed verdict.

.(2)   The court erred in instructing the jury and re-
fusing instructions.

(3)   The court erred in excluding certain testimony.

(a)   It is contended, that a verdict should have been
directed for appellant, because the evidence failed to
show, that the engine was built according to the contract,
and that it was not shown, that the directions or interfer-
ence of appellant, was the cause of the failure of appellee,
to perform its contract. Of course, under such a contract.
it is a condition precedent to appellee's right of recovery,
that it should have first, performed its contract. Its con-
tract, was to build an engine, according to the plans,
specifications, and patterns furnished by appellant. The
evidence, strongly, conduces to prove, that it did so. The
contract was not one, which the statute of frauds re-
quired to be in writing, nor did the contract require the
plans and specifications to be in writing. The parties
could change the contract, at any time, by mutual agree-
ment. There is, however, no evidence, that they ever
made any change in the contract, but, the appellant chose
to furnish the specifications orally and probably, some
portion of the plans, and appellee accepted them, in that
way. Hence it must be concluded, that regardless of
what may have been in the minds of the parties, at the

time, the contract was made, as to the plans and specifications being furnished in writing, the appellant thereafter concluded to furnish them in writing or prints, or orally, as it was convenient for him to do, and appellee agreed thereto, by proceeding with the work, in that way. If there was defective material used, the appellant having selected it and supervised its making into the parts, and directed the adjustments, was estopped to deny, that it was not used and done according to the contract and was such as the contract required. A party to a contract, who requests, and procures its performance in a certain way, can not complain, that it was not done according to the contract. Barton v. Gray, 24 N. W. 638; 16 Cyc. 805 The only evidence of the failure of appellee to perform the contract is the defect in the engine, above stated. When the appellant had supervision of the making of the parts, and their adjustments, the right to specify the dimensions, material, and the adjustment, and exercised that right, and when the proof conduces to show, that the workmanship is not at fault, and that the parts were made and adjusted as specified by the appellant, it can not be said, as a matter of law, that the contract was not performed, because of the described defect, in the engine, as the appellant, is estopped to deny that the contract was not performed, as to the dimensions of the parts and the adjustment. If the defect arises from the adjustment, and the adjustment was made by the direction of appellant, he can not complain of it.

(b) The court could have properly instructed the jury, by directing it to find for the appellee, if it made the engine according to the plans and specifications, and then instructed the jury, that the directions, given by appellant to the employees of appellee, were the specifications, and that the plans were the printed ones furnished, together with any changes made by the directions of appellant, but the instruction, as given, safeguards the rights of appellant, as it requires the jury, before finding for appellee, to believe that the engine was built in accordance with the plans and specifications, or to believe, that it was built as directed by the appellant before it could find a verdict for appellee, as under the facts of this case, if the engine was made of materials selected by the appellant, and the parts were made and adjusted as he directed, it was made in accordance with the plans and specifications, in fact, furnished by appellant. If it was

built in either of the ways, the appellant can not complain. The appellant, further, insists, that an instruction should have been given, which embodied, his theory as to the connection, he had with the building of the engine, in the way, as contended by him, showing that it was not such as to amount to an estoppel. The instruction given, required the jury to find, for appellant, unless it believed, that the engine was constructed, as requested and directed by him. In no event, could it be justified in finding against him, unless, the evidence showed, that the work was done and the materials furnished according to his directions. The instruction submitted, to the jury, the real issue, in the case. Postal Tel. Cable Co. v. Young, 172 Ky. 576; J. I. Case Threshing Machine Co. v Barney, 133 Ky. 321. The reason for the proper refusal of the instruction as to appellant's counterclaim, has, already, been stated, as an instruction must be based upon some evidence as well as the pleadings.

(c)  The evidence, the exclusion of which is complained of, was the refusal of the court to permit the plaintiff to attempt to prove, that an engine, such as the one in controversy, would operate well, and be without defect, if properly constructed, by proving, that a similar engine did so. It was not proven, nor offered to be proven, that the engine, with which it was proposed to compare the one, in controversy, was the same kind, in make and adjustment. The proof offered to show, that the principle, upon which the engine in controversy was designed, was a correct principle, was immaterial, as there was no issue upon that subject, and no evidence, that the engine in controversy, was defective, because of the principle upon which, it was conceived, and besides, while the principle contemplated might be correct, evidence to that effect would not prove that the engine, in controversy, was not made in accordance with the plans and specifications.

Upon the whole case, it appears, that the appellant had a fair trial upon the merits of his case, and there appears, upon the record, no prejudicial error.

(d)  It is insisted, that the court was in error, in sustaining the attachment, granted at the commencement of the action. The grounds of the attachment are, that the appellant has no property, in the state, subject to execution, or a sufficiency to satisfy the demand of appellee, and that the collection of the demand will be endangered

by delay in obtaining judgment or a return of no property found as provided for in subsection 2 of subsection 8, of section 194, Civil Code. The appellant did not controvert the allegation, that he had not property, subject to execution, sufficient to satisfy the debt, but he did controvert the statement, that the collection would be endangered by delay in obtaining judgment and a return of no property found. This made an issue, but the burden was upon appellant, and he, not having produced any evidence, nor requested the opportunity to do so, the court was not in error, in sustaining the attachment. The fact, that he had no property subject to the execution, being admitted, a *prima facie* case, was made for the appellee, upon the attachment, which if appellant desired to overcome, it was incumbent upon him to do so by evidence. Dunn, Trustee v. McAlpin, 90 Ky. 78; Downs v. Ringgold, 101 Ky. 392.

The judgment is, therefore, affirmed.