## Fowlkes v. Ohio Valley Tie Company.

(Decided April 24, 1925.)

Appeal from Jefferson Circuit Court
(Chancery Branch, First Division).

Evidence—Evidence of Contracts, to Pay Both Salary and Percentage, Made Subsequently with Others, Held Properly Excluded. —On quesiton of existence of alleged contract by which an officer and general manager of defendant company was to get percentage of net profits in addition to salary, evidence that, by subsequent contracts, two of defendant's field superintendents were allowed percentages, was properly excluded, under general rule excluding wholly independent transactions.

HARRIS W. COLEMAN and TRABUE, DOOLAN, HELM & HELM for appellant.

S. J. BOLDRICK and JAMES GARNETT for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Fowlkes instituted this action in equity for an accounting upon an alleged contract, by which he was to receive thirty per cent of defendant's net profits, in addition to the salary of $300.00 per month paid him for his services as its vice president and general manager, from March 14, 1919, to June 14, 1920. Defendant denied the alleged contract, and its motion for a trial of the

issue before a jury was sustained, resulting in a verdict for the defendant and a dismissal of the petition.

For reversal of that judgment, it is insisted: (1) That the trial before the jury was advisory only, and that the chancellor erred in treating it as a trial of a common law issue and dismissing the petition because of the verdict thereon, and (2) that the judge of the common law division of the court, before whom the jury trial was had, erred (a) in excluding evidence offered by appellant, (b) in giving and refusing instructions, and (c) in refusing to discharge the jury for misconduct of counsel for defendant.

1. We think counsel are in error in their contention that the jury trial was of an issue out of chancery rather than of a common law issue, but we need not discuss that question, since we are clearly of the opinion that, treating the trial by the jury as advisory only, as they insist it must be treated, the evidence is amply sufficient to sustain the finding of the chancellor, in accordance with the verdict that there was no such contract as alleged.

This conclusion also renders unnecessary a discussion of the alleged errors in the instructions and the refusal to discharge the jury for improper argument of counsel, and there remains for consideration only whether or not offered evidence was improperly excluded, which is of like materiality upon the trial of the issue of contract *vel non,* whether by the chancellor or the jury.

This evidence was that, under its contract with two of its field superintendents, defendant paid them in addition to their salaries a percentage of its net earnings.

Plaintiff claimed that his contract was made on March 14, 1919, when he was elected vice president and general manager of the defendant company, and the offered evidence shows that the profit-sharing contracts made by defendant with the witnesses were made some time thereafter, and that their duties were wholly different in character from those of plaintiff. There was, therefore, no connection whatever between the alleged contract between plaintiff and defendant and its contracts with these other employees, and the court did not err in refusing to admit such evidence.

The fact that some time subsequent to its employment of plaintiff as its vice president and general manager, the defendant entered into a wholly independent

and different contract with some of its field men by which they were to share in the company's profits, is no evidence whatever that the contract with plaintiff contained a similar feature, and none of the cases relied upon by appellant supports his contrary contention.

The first of these is First National Bank v. Wisdom, 111 Ky. 135, 63 S. W. 461, wherein the defendant claimed the note sued on was a forgery, and in support of his claim he was permitted to prove other forgeries committed at the same time by the same bank official. In Rakestraw v. Sebree Deposit Bank, 189 Ky. 668, 225 S. W. 506, it was pointed out that such evidence was admitted in that case under an exception to the general rule to show a criminal course of conduct of an employee of the bank at the time when the note sued on was executed, and which, for that reason, had a tendency to show that that note was similarly executed.

As said in the opinion in the Wisdom case:

"In other words, he was a defaulter to the bank, and, as necessity arose, resorted to one expedient or another, from time to time, to cover his sins. The notes were not, therefore distinct transactions, but were logically connected. A transaction may not be confined to what is done on one day or at one place. Immediateness is tested, not by closeness of time, but by logical relation."

That there was no logical relation between the defendant's contract with appellant, when, in March, 1919, he was elected its vice president and general manager, and its contracts made some time thereafter with two of its field men, is, we think, clear.

The other cases relied upon by appellant upon this point are: L. & E. Ry. Co. v. Lyons, 104 Ky. 23, 46 S. W. 209; Smith v. Montgomery, 5 T. B. Monroe 502; and Martin v. Logan, 99 S. W. 648, 30 Ky. L. R. 799, each of which is by its facts easily distinguishable from the case at bar, whose facts clearly bring it within the general rule excluding evidence of other wholly separate and independent transactions. See Stoner v. Nall, 149 Ky. 124, 148 S. W. 8; Newton v. Bayless Fruit Co., 155 Ky. 440, 159 S. W. 968; Sheffield-King Milling Co. v. Sorg, 180 Ky. 539, 203 S. W. 300; Moors v. Ky. Electrical Co., 182 Ky. 825, 208 S. W. 15.

Perceiving no error prejudicial to appellant's substantial rights, the judgment is affirmed.