Thomas Shanks, et al., *v.* John M. Stephens, et al.

[Abstract Kentucky Law Reporter, Vol. 6—516, 525, 526.]

**Interest on Note.**

In the absence of a promise to pay a given rate of interest until the note is paid it is the law that the note will draw the designated interest until maturity and after maturity only the rate established by the statute.

**Construction of Writings on Same Subject.**

Different writings relating to the same subject executed at the same time to effectuate the same object are to be construed together as one instrument.

**Usury.**

Where one agrees in a written instrument to pay interest semi-annually at six per cent. per annum and also to make annually what

is termed a "donation of sixty dollars," it is an invasion of the law against usury and the debtor is entitled to have such donations credited on the principal of the debt.

### Right of Second Lienholder to Plead Usury in First Lien.

One holding a second lien may plead and prove usury in the claim of the first lienholder for the purpose of having such usury credited on the first lien, thereby reducing the amount of the first lien.

APPEAL FROM LOUISVILLE CHANCERY COURT.

January 15, 1885.

OPINION BY JUDGE HOLT:

This action was brought by the appellees upon a note which reads thus:

"$1,000.                    Louisville, Ky., December 24th, 1862.

Twelve months after date I promise to pay to the order of J. M. Stephens, President of the Board of Trust of the Fireman's Fund of the City of Louisville, Ky., the sum of One Thousand Dollars, with interest from date, payable semi-annually. For value received, negotiable and payable at the_____

H. H. Sale."

In the absence of any other writing evidencing the contract, the above provision, "with interest from date, payable semi-annually," would be restricted to the date of the maturity of the note, and after that time it would by operation of the statute bear current interest.

But simultaneous with the execution of the note a mortgage was given to secure its payment and which the appellees in this action are seeking to enforce, and which contains this clause: "The condition of the above is this: that, whereas, the said first party stands justly indebted to the said Board of Trust in the sum of One Thousand Dollars for which he, the said first party, has executed his note of this date, payable in twelve months and bearing interest until paid, said interest to be paid semi-annually."

It is a well settled rule that different writings relating to the same subject, executed at the same time and to effectuate the same object are to be treated as one instrument and construed together. *Jackson v. McKenney,* 3 Wend. (N. Y.) 233; *Hills v. Miller,* 3 Paige Chancery (N. Y.) 254; *Jackson v. Dunsbaugh,* 1

Johns. Cases (N. Y.) 91; Jones on Mortgages, § 71; *Atkyns v. Horde,* 1 Burr., 107.

In the last named case Lord Mansfield in speaking of two instruments of the same date and relating to the same subject says: "The internal evidence of the thing itself speaks them to be one transaction, and the same to all intents and purposes as if expressed in one instrument."

The note sued on is silent as to the agreement of the parties to it as to when any interest that might accrue after its maturity should be paid. But the note and mortgage considered together show that it was the agreement of the parties to the transaction that all interest on it whether before or after maturity should be paid semi-annually.

The payments made on the debt by the debtor show that the parties understood the contract according to the construction which must be put upon both the note and mortgage when considered together.

Parties may lawfully contract for the payment of interest as it accrues, and it may be recovered by an independent action, and the view of the lower court upon this point was in our opinion correct. *Radford, et al. v. Southern Mutual Life Insurance Company,* 12 Bush (Ky.) 434.

It appears that the Fireman's Fund was for the benefit of disabled firemen and their widows and orphans; and that the note of the appellees was executed for money borrowed from the fund, the appellant Sale agreeing to pay interest semi-annually at six per cent. per annum and also to make annually what was termed a "donation" of sixty dollars to the fund.

It is claimed by the appellees that Sale so agreed because he had at one time been a fireman, and in case of his becoming disabled would have been entitled to relief from the fund; but it is not shown that he would in fact have been entitled to such assistance.

The only witnesses who testify as to the loan are the appellant Sale, and one Summers, who was one of the trustees of the fund. The former in substance says that the said donation was in fact additional interest on the loan and was intended and understood to be in lieu of six per cent. per annum additional interest upon the loan, and that thereby he in fact paid twelve per cent. per annum interest upon it.

Upon the other hand Summers testifies that it was a "donation;" but we are satisfied that this was but colorable and that in fact it was a device to cover up the payment of usury and its reception a transparent effort to evade the law. Such liberality by a borrower is unusual.

The donation was exactly equal in amount to the six per cent. interest.

Many payments of interest were made; and the "donation" was often paid at the same time, as is shown by the receipts, and such an evasion of the law can not be sanctioned, or concealed by a charitable cover.

The appellant, Sale, did not plead the usury, but only claimed credit for the donations as payments on the debt. The appellant Shanks, however, who held a junior mortgage on the same property mortgaged to the appellees, and was therefore interested in the question, set up these "donations" as usurious payments and relied upon them as such.

The plea of usury was not a personal one to Sale. Indeed it is questioned if the chancellor should not have allowed these payments as credits upon the appellee's debt without any plea of usury; and in any event the appellant Shanks, although his debt had not been created when they were made, had the right to rely on them as payments or as usurious as he was interested in the mortgaged property and it was insufficient to pay the liens upon it. *Hart, et al. v. Hayden, et al.,* 79 Kentucky, 346.

The act of the legislature providing for the forfeiture of all interest in a case where usury was intentionally charged does not in this instance prevent the appellees from recovering current interest upon their debt after September 1, 1871, when said act took effect although they received usury after that date. The law was penal in its character and was not in force when this action was brought on August 12, 1879, having been repealed by the act of March 2, 1878. *Johnson v. Utley,* 79 Kentucky, 72; *Bunger v. Hart,* 3 Kentucky Law Reporter, 518.

The claim of the appellant, Shanks, to a superior lien on the mortgaged property for the state taxes for 1873-4, paid by him, was properly disallowed. It is true that he had an interest in the property as mortgagee and that the payment enured to the benefit of all who were interested in the property, but he does not allege the

facts in his pleading showing that it had been legally assessed or that the steps necessary to the existence of a tax lien had been taken. Moreover he had accepted Sale's note for what he had so paid and had thus by his own act placed the claim upon the footing of an ordinary debt.

In the case of *Leach v. Kendall's Administrator,* 13 Bush (Ky.) 424, where a claim was asserted for state and county taxes, alleged to have been paid by the claimant, this court said:

"Unless the necessary steps were taken, neither the Commonwealth nor the county had a lien upon the land, and unless there was a lien, the appellant could not make the intestate his debtor by paying the taxes. In order to show the existence of a lien, it was necessary to show that the land had been legally assessed for the several years included in the claim; and in order to show the amount of taxes it was necessary to show the value at which it was assessed each year."

This language applies with equal force to the claim of the city of Louisville for taxes for several years upon the property in contest and which was asserted by a cross petition and allowed to the extent of $245.93, being the amount of the taxes for the years 1875-6-7-8 and 9, together with interest on each year's taxes from June 1st, when it was alleged that they were due.

The allegations of its pleading are insufficient to uphold the judgment in its favor.

It alleges that the ordinance relating to the taxes was duly passed by the council; was duly approved by the Mayor and was duly published.

Even if it be admitted that the statement as to its passage and approval is sufficient, yet that relating to its publication is certainly but a legal conclusion, and the facts as to the publication should have been alleged.

In a proceeding to subject property to the payment of taxes it is necessary to state the facts affirmatively, showing that every step has been taken which was necessary to create the lien.

They reach to the substance of the action, and their absence presents a state of case where no cause of action is stated and not merely one defectively stated. *Kendall v. Thomasson,* 2 Kentucky Law Reporter, 422.

Nor can interest be allowed on taxes by way of damages.  *Ormsby, et al. v. City of Louisville,* 79 Kentucky, 197.

Upon the return of this cause the city if it desires to do so should be permitted to amend its answer and cross petition.

For the reasons indicated and in the respects only pointed out herein the judgment is *reversed* and cause remanded for further proceedings consistent with this opinion.   (Appealed from Superior Court, 4 Ky. L. 838.)

*Rodman & Brown, for appellants.*

*Elliott & Hemingray, for appellees.*

[Cited, *Wilcoxson v. Morse,* 19 Ky. L. 1832, 44 S. W. 142.]