## Owings v. Rider.

(Decided February 12, 1932.)

C. C. WILLIAMS for appellant.

B. J. BETHURUM, L. L. WALKER, and R. B. BIRD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Overruling appellant's motion to correct record, and overruling her petition for rehearing.

The judgment appealed from herein was affirmed by this court on November 27, 1931. The opinion is reported in 241 Ky. 576, 45 S. W. (2d) 487, and to which reference is made for the facts. After it was handed down, and on December 15, 1931, appellant's counsel filed certain motions in this court, followed by a petition for a rehearing, and asked it to withdraw the opinion referred to, and to

set aside the judgment of affirmance, as well as the order of submission of the case, and for leave of appellant to file a corrected record followed by a resubmission of the case, and for a reversal of the judgment. There was tendered therewith a corrected record, which, if permitted to be filed, would change altogether the decisive question in the case, and present one entirely different from the one presented by the original record and disposed of in our opinion of affirmance, and with no certainty of a different result.

No authorities are cited in support of appellant's right to such relief, coming as it does after the appeal was disposed of by this court on the record that appellant filed in this court. On the contrary, the text in 4 C. J., 496, 497, and 498, secs. 2244-2248, both inclusive, state the general and almost universal rule to be that an *appellant,* who prosecutes the appeal and who files the transcript in the appellate court, will not be granted the character of relief here sought after the appeal has been argued and submitted, and especially will it not be granted after the *rendition* of an opinion by the appellate court. Notes to the text found on the pages of the volume referred to contain cases from appellate courts in many jurisdictions in this country sustaining that rule, and it has been adopted and applied by this court in a number of its opinions.

Section 104, on page 183 of Miller's Appellate Practice, in stating the rule applicable to the circumstances here presented, says: "The court will not grant *appellant* a rehearing in order to enable *him* to perfect the transcript. But in cases in which the complete record is required, the *appellee* will be permitted to supply omitted portions of the record after judgment, where the incomplete transcript has been filed by the *appellant;* and, a rehearing may be granted *appellee* thereon." (Our emphasis.) The domestic cases cited in notes 27 and 28 to that text deny the right of *appellant* to have any such relief on an application therefor made after the appeal has been determined by this court, some of which, together with others of like tenor, appear below.

In the case of Christopher v. Searcy, 12 Bush. 171, the exact question under consideration was presented and the relief sought by the motion of appellant was denied in an opinion, the entirety of which says: "This court must try and dispose of cases upon records as submitted.

If the practice is to be indulged of granting rehearings after a careful examination of records and after delivering opinions on them as presented, because it is afterward discovered that the records were incomplete, the labors of the court, already burdensome beyond measure, will be greatly increased; and it would seem to offer a premium for inattention on the part of the profession in the preparation of their cases. It has been repeatedly held by this court that for a discovery of a diminution of the record after the case had been heard and opinion delivered a rehearing will not be granted."

A like motion was similarly disposed of in an opinion reported on page 282, 78 Kentucky, in the case of Yeager v. Groves. A similar ruling was made in the case of Owingsville & Mt. Sterling Turnpike Road Co. v. Hamilton, 54 S. W. 175, 21 Ky. Law Rep. 1150, and the doctrine of the Christopher opinion was expressly referred to and approved. The right to the relief sought by a similar motion made by appellant was again denied by this court in the two comparatively late cases of Miller Creek Railroad Co. v. Barnett, 160 Ky. 845, 170 S. W. 202, and Meyers v. Saltry, 164 Ky. 350, 175 S. W. 626.

In the Meyers case, Judge Carroll, in speaking for the court, said: "The exceptional circumstances attending this motion strongly persuade us to grant it, but, in view of the uniform ruling of this court in refusing similar requests, it must be denied. [Inserting domestic cases.] A different rule prevails when a motion is made by *appellee* to file an additional record after an opinion has been handed down and before the petition for a rehearing has been disposed of"—quoting cases. (Our emphasis.) The language of the opinion denying the relief at the request of *appellant* in the Barnett case is equally positive and emphatic. The rule as applicable to *appellant,* the one prosecuting the appeal and filing the record in the appellate court, may in some instances prove a harsh one to that litigant, but a different one would be obstructive of the orderly administration of the work of courts, as well as productive of harmful delay in the performance of their functions. It would also encourage carelessness and negligence on the part of appellants in failing to see to it that the records they file in the appellate court are complete and accurately present

the question determined below, and which they ask to be reviewed.

In discussing the imperativeness of the uniform application of another rule of procedure relating to the sufficient quantum of proof to overcome the statements in official certificates, notwithstanding its uniform application might sometimes produce individual cases of hardship, this court, in the case of Harpending's Ex'rs v. Wylie, 14 Bush 380, said:

"Such a rule will no doubt produce individual cases of hardship. But this is nearly always the necessary consequence of the establishment of a general rule of law. Human laws are necessarily imperfect. All they can do is to provide rules that will in the long run be promotive of the general good. Either this or each case must be decided according to the conscience of the judge, which would lead to utter and hopeless confusion and uncertainty."

That excerpt is pertinent here.

Were it not for the existence of the rule, and the requirement that it should be observed (unless under circumstances clearly relieving appellant or his counsel from fault), then appellate courts would never know when their labors were ended, and it also would be possible for a litigant to experiment with the court and, if unsuccessful on an incomplete or incorrect record, to then procure a second hearing on a corrected one, and which itself might not be an exact reproduction of the one made in the trial court, thereby opening the door for an additional hearing and thus overtax the court with accumulated labors that should have been prevented from the beginning. The reason why the application of the rule is so mandatory as to the *appellant,* but not as to the *appellee,* is because the appeal is taken by the former, and it is he, or some one in whom he trusts, who prepares the record for the appeal and files it, and the duty is upon him to see that it is a complete and correct one, at least before the appeal is disposed of by the appellate court.

Viewed in the light of what has been said, the almost, if not entire, universal conclusion of all courts is, that it is best that the rule should be as declared, although its administration might be followed by harsh results in some instances. In this case no excuse is offered, either

by the clerk who transcribed the record, or by attorney for appellant explaining why it was not correctly done, except an oversight of the clerk; but not even that excuse is offered by counsel. However, under the rule as so declared, such an excuse would be insufficient unless, perhaps, it was fortified by the manifestation of facts convincingly refuting negligence or carelessness. The opinion, as written on the record then before us, is not attacked in the petition for rehearing.

In the light of the cases and authorities supra, there appears no other course open to us except to overrule the motions and also overrule the petition for rehearing rested thereon, which is accordingly done.